## GEORGE W. BROWN *vs.* JONAS EDWARDS, et als.

Penobscot.    Opinion June 30, 1903.

*New Trial.    Warranty.    Sale.    Horse.    Whistler.*

When it is obvious that the jury reached their conclusion by inferences not sustained by facts proved, a new trial will be granted.

In a case where the evidence consists principally of testimony which is neither discredited nor conflicting, and the cross-examination of the witnesses indicates no distrust of their truthfulness, the law court has the same opportunity as the jury to weigh the evidence.

In such a case, on a general motion for a new trial, the questions in dispute will be examined by the law court by a review of the evidence from the point of view of the parties.

The disease of whistling in a horse sold with a warranty was not known to the parties or any of their witnesses, until nearly two months after the sale, although nearly all of them were experienced horsemen, and the usual tests were applied.

Within a few days after the symptoms were first recognized the disease resulted fatally.

*Held;* that a theory that the disease existed in the horse in question, in a primary stage, at the date of the sale and warranty, is not well founded.

Motion by defendants.    New trial granted.

Assumpsit, brought after rescission, for an alleged breach of warranty in the sale of a horse.    Plaintiff's declaration was as follows:

"In a plea of the case, for that whereas the said defendants on the 24th day of January, A. D. 1901, at said Auburn, offered to sell to the plaintiff a certain brown horse of the said defendants, and thereupon then and there in consideration that the plaintiff at the special request of the said defendants would buy of the said defendants the said brown horse at a large price or sum, to wit, one hundred dollars, to be paid by the plaintiff to the said defendants upon request, the said defendants promised the plaintiff that the said brown horse was sound and the plaintiff in fact saith that he confided in the said promises of the defendants, and then and there at the special request of said defendants, did buy of the said defend-

ants the said brown horse at and for the price of one hundred dollars, and did then and there pay to the said defendants the sum of one hundred dollars, yet the said defendants did not regard their promise aforesaid but craftily and subtly deceived the plaintiff in this, that the said brown horse at the time of making the promise aforesaid was not sound, but on the contrary thereof was unsound and was afflicted with a certain malady or disease, called whistling or wind broken, and was of no value whatever; and the plaintiff alleges that as soon as he ascertained that said horse was unsound and afflicted with disease as aforesaid, he returned him to the said defendants on the 30th day of March, A. D. 1901, and has requested the said defendants to pay back to him the said sum of one hundred dollars thus paid them as aforesaid, whereby and by reason of which the said defendants became liable to the plaintiff and promised to pay him said sum of one hundred dollars.

Yet though often requested, said defendants have not paid said sum nor any part thereof, but neglect and refuse so to do, to the damage of said plaintiff (as he says) the sum of two hundred dollars."

The plea was the general issue.    The verdict was for plaintiff.

The facts appear in the opinion.

*P. H. Gillin and T. B. Towle,* for plaintiff.

Counsel contended that under the light of the testimony the plaintiff has proven by a fair preponderance of the evidence, first:    That the horse was warranted.    Second:    That there was a breach of this warranty, to wit; that this horse, sold and delivered to Mr. Brown, the plaintiff, was a whistler and a blower at the time he received him.

The evidence shows even in the light of the testimony of defendants' own witnesses, that this horse might have been kept by the plaintiff for a long period of time, and not until occasion presented itself, would he or any other person have found out that the horse was a whistler.    It would indeed be hard and unreasonable in a case of this kind were plaintiff compelled to show that the horse was a whistler and a blower before the sale, other than by circumstantial evidence.

Counsel contended that taking the testimony as it was offered in the case, connecting link with link, the jury could not have done otherwise than to have found a verdict for plaintiff. The disease of whistling existed in this horse in a primary stage at the date when defendant sold him to plaintiff with a warranty of soundness.

*Tascus Atwood; F. J. Martin and H. M. Cook*, for defendants.

SITTING: EMERY, WHITEHOUSE, STROUT, SAVAGE, PEABODY, SPEAR, JJ.

PEABODY, J.   Assumpsit to recover the price paid for a horse sold and delivered to the plaintiff after rescission of the sale for breach of warranty. The case is brought before this court on motion of the defendants to set aside the verdict of the jury because against law, evidence and the weight of evidence. The evidence consists principally of the testimony of witnesses not discredited or conflicting. From facts not in dispute the jury by their verdict must have found that the defendant warranted the horse sound except as to quarter cracks in the forward feet, and that it was at the time of the sale unsound by being affected with a disease called whistling. The warranty we think is proved; but the breach of warranty is a question which must be decided by a review of the evidence from the point of view of the parties.

It appears that the horse in question was purchased for the defendants just previous to the sale to the plaintiff by an experienced buyer who applied the usual tests to determine its soundness and discovered no evidence of whistling; and the defendants, making use of similar tests, and parties who used the horse in hauling coal failed to notice such defect. After the sale to the plaintiff the horse, being noticeable in its general appearance, was for weeks under the casual observation of experienced horsemen, and to them it appeared in good condition. Afterward it was sold by the plaintiff to a man by the name of Smith who was familiar with horses, and his examination failed to disclose unsoundness in respect to the horse's breathing until he was driving it home, a distance of twelve miles. The whistling became so manifest that in about a week he returned the

horse and the price which he had paid was refunded. The plaintiff thereupon, finding that the horse was unsound, shipped it back to the defendants by rail with notice to him of his reason for rescinding the sale. The horse when removed from the car was found to be sick and upon the advice of a veterinary surgeon it was chloroformed. The sale was made January 24th, and the rescission March 30th, 1901. It appears by the evidence that the disease was not known to the parties or any of their witnesses during a period of nearly two months, and that within a few days after its symptoms were recognized it resulted fatally.

The theory of the plaintiff is that the disease existed at the time of the sale and warranty in its primary stage, induced either by acute laryngitis or by paralysis caused by working in an ill-fitting collar, and that it had not become sufficiently developed to attract the attention of himself or those about his stables until after the sale to Smith. And he relies upon the testimony of the experts to show that if the horse was not driven fast or loaded heavily, no person could tell whether he was a whistler or not; and he claims that the condition of the weather was such that there had been no opportunity or occasion to use the horse in a way to develop symptoms of the disease.

The theory of the defendant is that the disease was contracted while in the possession either of the plaintiff or Smith from exposure in severe weather or from contagion; and he relies upon the fact that the horse was taken from a close stable and actually used in hauling snow and subsequently driven a considerable distance to Smith's home; and upon the further fact that when the horse was returned to him it bore evidence of having taken a sudden cold or of being affected by some other malady in an acute form inconsistent with the plaintiff's theory of the gradual development of the disease.

The parties were large dealers who must have had special knowledge in reference to conditions affecting the soundness of horses, and their acts do not indicate bad faith on the part of either, but that in fact neither of them knew that the horse was unsound, except the obvious defects in its feet, until it had been returned by Smith to the plaintiff. The cross-examination of the witnesses does not indicate

distrust of their truthfulness. This court has the same opportunity as the jury to weigh the evidence, and it is obvious that they must have reached their conclusions by inferences not sustained by facts proved. Nearly two months after the horse was warranted sound the disease which constituted the alleged breach of warranty· was first discovered. It is possible that it might not have been so far developed as to be observed under the existing circumstances, but it seems improbable that it could have existed at the date of the warranty when we consider the tests made by the purchasing agent, the three days of heavy work in hauling coal, the good general condition indicated by the appetite and appearance of the horse until a few days before its death. Beach on Contracts, § 281.

*Motion sustained. New trial granted.*